```
                    UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF RHODE ISLAND
_____
                                   )
PATRICIA MANNIX, Individually      )
and as Executrix for the Estate of )
MICHAEL MANNIX,                    )    C.A. No. 18-558 WES
                                   )
     Plaintiff,                    )
                                   )
          v.                       )
                                   )
CBS Corporation et al.,            )
                                   )
     Defendants.                   )
_____)
```

## **MEMORANDUM AND ORDER**

WILLIAM E. SMITH, Chief Judge.

Before the Court is Plaintiff's Motion to Remand (ECF No. 15), to which Defendant CBS Corporation has objected (ECF No. 16). For the reasons stated below, Plaintiff's Motion is denied.

I.   Factual Background

Plaintiff Patricia Mannix — executrix of her husband, Michael Mannix's estate — filed suit against twenty-seven defendants, including CBS Corporation[1], for loss of consortium based on the allegation that Mr. Mannix died prematurely from exposure to asbestos which had been manufactured or used by the various defendants. The Complaint alleged the following:

> Michael Mannix ("Plaintiff-worker") was injuriously exposed to asbestos as follows: Michael Mannix was a member of the United States

---

[1] CBS Corporation is a successor-in-interest to Westinghouse Electric Corporation, which corporation Plaintiff claims negligently exposed Mr. Mannix to asbestos-containing materials. (See Pl.'s Mem. in Supp. of Mot. to Remand 1, ECF No. 15-1.)

> Navy from approximately 1965 to 1969. During this time he served as a machinist mate, second class, on board the USS Saratoga (CVA-60) and was stationed out of the Philadelphia Navy Shipyard in Pennsylvania and the Mayport Navy Yard in Florida. Prior to his enlistment, Mr. Mannix worked at International Paper in Ticonderoga, New York . . . From approximately 1974 until 1978, Mr. Mannix was employed as a welder at Electric Boat in Groton, Connecticut. Finally, Mr. Mannix was employed as a welder at Electric Boat in North Kingstown, Rhode Island from Approximately 1979 until 1987. As a direct result of his exposure to asbestos, he suffered and died from mesothelioma. His wife, Patricia Mannix ("Plaintiff-spouse") makes a claim for loss of consortium . . . .

(Pl.'s Mot. to Remand, Ex. B ¶ 1, ECF No. 15-3.)

After the Complaint was filed, a decade of discovery and motion practice ensued, during which time nine of the twenty-seven defendants either settled or were granted summary judgment in state court. (See State Court R. Docket Sheet, ECF No. 7-2.) Importantly, during this time CBS propounded two sets of Interrogatories to Plaintiff. In the Standard Asbestos Interrogatories, Defendant inquired about Mr. Mannix's membership in the armed forces and requested various identifying information including when he served, where he was stationed, and any claims of "injury or physical condition arising out of military service." (Def.'s Opp'n to Pl.'s Remand Mot. ("Def.'s Opp'n"), Ex. 2, ECF No. 16-2.) Plaintiff supplied her answer on February 27, 2007, in which she reiterated the allegations in the Complaint and did not identify any injury from Mr. Mannix's military service. (Id.) Five years later, in its

Supplemental Interrogatories, CBS asked Plaintiff to describe the specific products to which Mr. Mannix claimed exposure, the nature of his claimed exposure, the dates of his claimed exposure, and the names and addresses of all persons having knowledge of such exposure. (Def.'s Opp'n, Ex. 3, ECF No. 16-3.) Plaintiff objected to that interrogatory on May 9, 2012, arguing that the request was premature, overbroad, and unduly burdensome, that discovery was ongoing, and that she reserved her right to supplement her answer at a later date. (Def.'s Opp'n, Ex. 3, ECF No. 16-3.) There is no evidence that Plaintiff ever submitted supplemental answers to any interrogatories.

On September 10, 2018, Plaintiff's counsel sent CBS a settlement demand letter, which stated, in pertinent part:

> As you know, Mr. Mannix died at the age of 61 from mesothelioma. He served from 1965 to 1969 as a machinist mate aboard the USS Saratoga. During his naval career he worked exclusively throughout the entire ship and was exposed heavily to asbestos insulation that covered much of the equipment. Historical records indicate that there was [CBS] equipment including turbines, pumps, condensors and blowers located throughout the ship during Mr. Mannix's service aboard the Saratoga.

(Def.'s Opp'n, Ex. 4, ECF No. 16-4.) CBS promptly filed a Notice of Removal (ECF No. 1) on October 9, 2018, alleging that the letter had, for the first time, revealed a basis for removal under 28 U.S.C. § 1442(a). According to CBS, the settlement demand letter was the first time Plaintiff identified the specific asbestos-containing

3

products to which Mr. Mannix was allegedly exposed (CBS turbines) and contended that this information was essential to establish § 1442 jurisdiction. (Def.'s Notice of Removal ¶ 2, ECF No. 1.)

On November 8, 2018, Plaintiff moved to remand the case back to state court, arguing that CBS's removal was untimely because more than thirty days had elapsed since CBS received the Complaint. Alternatively, Plaintiff argues that, even if the thirty-day clock started ticking when she answered CBS's interrogatories in 2008 and 2012, CBS missed the deadline by several _years_. CBS responded that "removability is to be judged by the case as stated on the face of the complaint," that the Complaint did not contain sufficient facts to indicate that the case was removable under 28 U.S.C. § 1442, and that, therefore, the first document CBS received from Plaintiff indicating that the case was removable under that statute was the September 10, 2018, letter. (Def.'s Opp'n 13.)

II. Legal Standard

28 U.S.C. § 1442(a) permits removal of a case from state court when the action is brought against "[t]he United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office." 28 U.S.C. § 1442(a)(1). The timeliness of removal under § 1442 is governed by 28 U.S.C. § 1446, which specifies two time periods within which a defendant must remove a case to federal court:

4

(1) "If the case as stated by the initial pleading is removable, Section 1446(b)(1) requires the defendant to remove within thirty days of its receipt"; and (2) if the initial pleading does not present grounds for removal, then "[s]ection 1446(b)(3) requires the defendant to remove within thirty days of receiving a subsequent paper from which it may first be ascertained that the . . . action is or has become removable." Romulus v. CVS Pharmacy, Inc., 770 F.3d 67, 69 (1st Cir. 2014); 28 U.S.C. § 1446(b). In order to remove a case under § 1442, the defendant must prove that "(a) it is a 'person' within the meaning of the statute; (b) there is a causal nexus between its actions, taken pursuant to a federal officer's directions, and plaintiff's claims; and (c) it can assert a colorable federal defense." Durham v. Lockheed Martin Corp., 445 F.3d 1247, 1251 (9th Cir. 2006) (quotations omitted); see also Ruppel v. CBS Corp., 701 F.3d 1176, 1180 (7th Cir. 2012).

Whether a case is removable "is to be judged by the case as stated on the face of the complaint." Romulus, 770 F.3d at 74-75 (1st Cir. 2014); 28 U.S.C. § 1446(b). Therefore, to trigger the thirty-day clock, the plaintiff's papers must provide the defendant with sufficient facts to support all of the requirements for removal under the applicable statute – here, 28 U.S.C. § 1442. See Contois v. Able Indus. Inc., 523 F. Supp. 2d 155, 157-58 (D. Conn. 2007) ("A pleading enables a defendant to intelligently ascertain removability when it provides the necessary facts to support [the] removal

5

petition." (quotations omitted).) While the defendant must apply "a reasonable amount of intelligence in ascertaining removability," it need not "look beyond the initial pleading for facts giving rise to removability." Id.; see Lovern v. Gen. Motors Corp., 121 F.3d 160, 162–63 (4th Cir.1997) (grounds for removal must be "apparent within the four corners of the initial pleading or subsequent paper"); Beamis v. Buffalo Pumps, Inc., No. CIV.A. 08-472S, 2009 WL 462543, at *2 (D.R.I. Feb. 23, 2009) ("'[A] plaintiff must provide sufficiently specific facts or allegations to allow the defendant reasonably to identify the contracts' supporting federal officer removal" under § 1442. (quoting Hilbert v. McDonnell Douglas Corp., 529 F. Supp. 2d 187, 194 (D. Mass. 2008))).

III. Discussion

    A. Party Arguments

Plaintiff argues that the original Complaint "provide[d] the necessary facts" to support a removal petition under § 1442 because it clearly alleged that Mr. Mannix was exposed to asbestos while working in the Navy as a machinist from 1965-69 aboard the USS Saratoga in two specifically identified shipyards. Contois, 523 F. Supp. 2d at 157-58. According to Plaintiff, CBS "could not foreclose the possibility of removal after a reading of the allegations of the Complaint" because CBS "is aware of its longstanding relationship with the U.S. Navy and [that Plaintiff's] claims arise[] from that relationship" and because CBS "has been forced to defend asbestos

6

claims involving their turbines previously." (Pl.'s Mem. in Supp. of Mot. to Remand ("Pl.'s Mem.") 5.) Therefore, Plaintiff contends that the allegations in the Complaint were sufficient to put CBS on notice that it could assert the government contractor defense and that the thirty-day clock to remove began ticking on October 4, 2007, when CBS was served with the Complaint. (Id.)

CBS argues that, until Plaintiff revealed that Mr. Mannix's alleged asbestos exposure occurred while working specifically with CBS-supplied turbines on the U.S.S. Saratoga - "as opposed to some other type of [CBS] product, or exposure to a [CBS] product at one of Mr. Mannix's other exposure sites" - CBS was unable to ascertain whether its actions were taken pursuant to a federal officer's directions or whether it had a colorable government contractor defense. (Def.'s Opp'n 14 ("[W]hile Plaintiff alleged that Mr. Mannix served as a machinist mate aboard the Saratoga, no allegation was had that any [CBS] equipment was installed on the Saratoga, much less was it specifically alleged on the face of Plaintiff's Complaint that Mr. Mannix was exposed to asbestos from [CBS] equipment aboard that Navy ship.").) Furthermore, CBS notes that its Standard Interrogatories asked Plaintiff to specifically identify the worksites at which Mr. Mannix had personal knowledge of inhaling dust or fibers emitted from asbestos-containing products and that Plaintiff listed only Mr. Mannix's private-sector employers, and not the Navy, in her answer. (Def.'s Opp'n 16.)

7

B. Analysis

"[T]he analysis for determining whether the four corners of the pleading is sufficient is an objective one: the issue is not what the defendant knew, but what the relevant document said." Barnes v. Foster Wheeler Corp., Civil No. 13-1285 (JBS-JS), 2013 WL 2649793, at *3 (D.N.J. June 11, 2013) (quotations omitted); see also Romulus, 770 F.3d at 74 ("Based on the text of the statute, we hold that the defendant looks to the papers provided by the plaintiffs to determine whether Section 1446(b)'s removal clocks have been triggered. Every circuit to have addressed this issue has likewise adopted some form of a bright-line rule that limits the court's inquiry to the clock-triggering pleading or other paper in order to determine removability." (quotations omitted)).

Here, CBS almost certainly could have guessed that this case was removable prior to September 10, 2018. As Plaintiff points out, CBS "was fully aware of the fact that it manufactured turbines on the USS Saratoga" and had experience in nearly identical asbestos-litigation, and it had engaged in over a decade of discovery and dispositive motions in this case in state court. (Pl.'s Mem. 6.) However, in assessing whether removal was timely, the Court looks only to the contents of Plaintiff's papers, not what CBS might have or should have known.

Neither the Complaint nor Plaintiff's subsequent interrogatory answers indicated what type of CBS products Mr. Mannix came in

8

contact with during his Navy tenure or whether Mr. Mannix encountered those products in the context of his military service or in the context of his subsequent private employment. Prior to receiving the settlement demand letter, CBS could not reasonably ascertain which product allegedly caused Mr. Mannix's exposure to asbestos, whether CBS manufactured that product, or whether the product was produced or used under the direction of the federal government; without those facts, CBS could not know with certainty whether it would be able to assert a colorable government contractor defense, a necessary element of removal under 28 U.S.C. § 1442. See Durham, 445 F.3d at 1251 (To remove a case under § 1442, the defendant must prove that "(a) it is a 'person' within the meaning of the statute; (b) there is a causal nexus between its actions, taken pursuant to a federal officer's directions, and plaintiff's claims; and (c) it can assert a colorable federal defense.") (quotations omitted).

Because the September 10, 2018, letter was the first document to connect specific CBS products with Mr. Mannix's service as a Navy machinist between 1965 and 1969, it constitutes the first "other paper" from which it was ascertainable that CBS could assert a government contract defense and, by extension, that the case was removable under 28 U.S.C. § 1442. Accordingly, CBS's October 9, 2018, Notice of Removal was timely. See 28 U.S.C. § 1446(b) ("[A] notice of removal may be filed within 30 days after receipt by the defendant . . . of a copy of an amended pleading, motion, order or

other paper from which it may first be ascertained that the case is one which is or has become removable.").

Having established that removal was timely, the Court now turns to whether removal was appropriate, i.e., whether CBS has established that it is a "person" under § 1442, that it was "acting under" a federal officer, and that it can assert a colorable federal defense for its actions. See Durham, 445 F.3d at 1251

Plaintiff does not dispute that CBS, as a corporation, is a "person" under the statute. Additionally, CBS avers that it was "acting under" the U.S. Navy when it designed and supplied asbestos-containing products pursuant to the Navy's own military design specifications ("MilSpecs") and attached those MilSpecs to its Opposition. (Def.'s Opp'n 18; id., Ex. 6, ECF No. 16-6.). Finally, CBS has stated a colorable federal defense, asserting immunity as a government contractor.

To assert the government contractor defense, CBS must allege: "(1) the United States approved reasonably precise specifications [for CBS's products]; (2) the equipment conformed to those specifications; and (3) [CBS] warned the United States about the dangers in the use of the equipment that were known to [it] but not to the United States." Boyle v. United Techs. Corp., 487 U.S. 500, 512 (1988). Here, CBS attached to its Opposition the affidavit of Retired Navy Rear Admiral Roger B. Horne, Jr., who averred that the MilSpecs required CBS to use asbestos in its turbines, that the Navy

carefully inspected the turbines, and that the Navy would have rejected a turbine without asbestos. (Def.'s Opp'n, Ex. 5 at 10, 15, 16, ECF No. 16-5.) CBS also submitted the actual MilSpecs, which show that the Navy required CBS to use asbestos. (See Def.'s Opp'n, Ex. 6.) These submissions satisfy the first two prongs of the government contractor defense – that the United States approved reasonably precise specifications and that the equipment conformed to those specifications. See Boyle, 487 U.S. at 512. With respect to the final prong of the defense, CBS has provided the affidavit of Dr. Samuel Forman, who studied the Navy's knowledge of asbestos-related hazards and who attests that the Navy knew of all the hazards associated with asbestos as early as 1922. (Def.'s Opp'n, Ex. 9, ECF No. 16-10.) Thus, CBS has plausibly alleged that there were no "dangers in the use of the equipment that were known to the supplier but not to the United States." Boyle, 487 U.S. at 512.

Whether the government contractor defense will ultimately be successful "is an issue for trial, not one that the court should address on a motion to remand." Contois, 523 F. Supp. 2d at 161; see Hagen v. Benjamin Foster Co., 739 F. Supp. 2d 770, 782 (E.D. Pa. 2010) ("While the Court must require that the facts identified by the defendant support the federal defense, the Court is not called upon at this preliminary stage to pierce the pleadings or dissect the facts stated. Nor is it the Court's function at this stage to determine credibility, weigh the quantum of evidence or discredit

11

the source of the defense." (citations omitted)). Therefore, because CBS has asserted a colorable government contractor defense, it appears that removal was appropriate under 28 U.S.C. § 1442.

IV. Conclusion

For the reasons stated herein, the Court DENIES Plaintiff's Motion to Remand (ECF No. 15).

IT IS SO ORDERED.

/s/ William E. Smith
William E. Smith
Chief Judge
Date: January 9, 2018